IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| TRACY REEVES, individually, and as next friend of Raymond Reeves, a minor, | : : : : | |
| Plaintiff, | : : | **CIVIL ACTION** |
| v. | : : | **No. 5:17-CV-198 (CAR)** |
| RICHARD KEY, in his individual capacity, and BIBB COUNTY SCHOOL DISTRICT; | : : : : | |
| Defendants. | : : | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Tracy Reeves filed this action, individually, and as next friend of Raymond Reeves, a minor, alleging Defendants Richard Key and the Bibb County School District violated Raymond Reeves' right to bodily integrity under the Due Process Clause of the Fourteenth Amendment when Defendant Key placed Raymond's arm in an "unnatural position behind his back for more than 20 minutes."[1]  Plaintiff also brings state law assault and battery claims against Defendant Key. Currently before the Court is Defendants' Motion to Dismiss the Amended Complaint for Failure to State a Claim.[2]   Having

---

[1] Pl.'s Amended Complaint, [Doc. 6] at para. 6.

[2] On March 31, 2017, Defendants filed a Motion to Dismiss for Failure to State a Claim.  On June 5, 2017, Plaintiff filed an Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), and Defendants subsequently filed a second Motion to Dismiss the Amended Complaint. Because Plaintiff's Amended Complaint supersedes the original Complaint, and Defendants filed a new Motion to Dismiss,

considered the Motion, pleadings, and applicable law, Defendants' Motion to Dismiss [Doc. 9] is **GRANTED**.

## LEGAL STANDARD

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint.[3]  To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[4]  A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5]  The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[6]  Additionally, under Federal Rule of Civil Procedure 10(c), exhibits attached to the complaint "are part of the pleading for all purposes," including a Rule 12(b)(6) motion.[7]

## BACKGROUND

At all times relevant to this action, Raymond Reeves was a student at Rutland Middle School ("Rutland") in Bibb County, Georgia.   According to the Amended

---

Defendants' first Motion to Dismiss [Doc. 3] is now **MOOT**.  The Court will only consider the Amended Complaint and the Defendants' Motion to Dismiss the Amended Complaint [Doc. 9].

[3] *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[5] *Id.*

[6] *Twombly*, 550 U.S. at 556.

[7] Fed.R.Civ.P. 10(c); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007); *Solis–Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) (per curiam).

Complaint, on or about April 29, 2015, Defendant Richard Key, the principal of Rutland, placed Raymond's arm in an unnatural position behind his back for more than twenty minutes and caused Raymond serious personal injuries.[8]  Plaintiff contends Defendant Key's actions were without justification or disciplinary purpose and undertaken with actual malice and the intent to inflict bodily harm on Raymond.[9]  In addition, Plaintiff alleges Defendant Key acted in accordance with the Bibb County School District's formal policy or custom allowing principals to engage in unjustified and excessive physical contact with students.[10]

To support these allegations, Plaintiff attached Defendant Key's written statement of what occurred that day as an exhibit to the Amended Complaint.[11]  According to the statement, the Rutland students were taking tests throughout the building on April 29, 2015, and Defendant Key was assisting with calling classes to the lunchroom.  While making his way down the hallway, Key heard someone yelling in the 8th grade hall.  As Key rounded the corner, he found Raymond Reeves "sitting at the end of the lockers with his jacket over his head yelling that he was not going class."[12]  The following encounter occurred:

---

[8] Pl.'s Am. Compl., [Doc. 6] at paras. 6, 8.
[9] *Id.* at paras. 5, 8.
[10] *Id.* at para. 20.
[11] Pl.'s Am. Compl., Ex. A, [Doc. 6-2] at p. 2-3; *see also* Pl.'s Response to Defs.'s Mtn. to Dismiss, [Doc. 10] at p. 5 ("In support of these allegation, the Plaintiff has attached a statement from the Defendant Richard Key himself.").
[12] Pl.'s Am. Compl., Ex. A, [Doc. 6-2] at p. 2.

[Key] removed the jacket from [Raymond's] head and chastis[ed] him for yelling, informing him that there were students still testing at the room next door.  [Key] reached to help [Raymond] to his feet and [ ] directed him to class.  Raymond continued to yell and act out as he entered the class.  [Raymond] entered the room ahead of [Key] and continued to escalate.  [Key] followed him into the room telling him to go to his seat or to the reflection area to calm down.  Raymond did neither.  He continued yelling and acting out as he went behind the table by Mrs. O'Connor's desk.  [Key] met him on the other side of the table and placed him into an interim control hold.

Raymond continued to move forward and his aggressive behavior intensified, at which time [Key] moved Raymond to the wall while still maintaining the interim control hold.  After about 5 to 10 minutes, Raymond stopped struggling and fighting.  Maintaining contact with him but not releasing him, [Key] stood behind him patting his arm as [Raymond] continued to yell out that 'he was going to hurt the student that head-butted him the week before, that all [Key] wanted to do was to see him locked up [and] see [him] in handcuffs, [that he was] not trying to fight [Key],' etc.

[Key] used the broken-record technique to ask Raymond if he was ready to sit in his desk or to sit in the reflection area.  [Raymond] was not responding to [Key] so [Key] motioned for Mrs. O'Connor to come and speak to [Raymond].  Raymond responded to her the same as he did with [Key].  On a second attempt a few minutes later, Raymond responded to Mrs. O'Connor that he was ready to go to the reflection area.

[Key] walked with Mrs. O'Connor and Raymond to the reflection area and Raymond sat in the desk.  [Key] squatted down next to Raymond and talked to him about his behavior and sent for his lunch.   As [Key] exited the room, [he] directed Mrs. O'Connor to contact [Raymond's] father about the incident.  The intervention lasted about 20-25 minutes from when [Key] first intervened with Raymond until [he] exited the room.[13]

---

[13] *Id*. at p. 2.

The Amended Complaint alleges that due to Defendant Key's actions, "Raymond suffered serious personal injuries," and Plaintiff "incurred medical expenses on behalf of Raymond in excess of $3,900.00."[14]

## DISCUSSION

Based on these events, Plaintiff seeks to hold Defendants Key and the Bibb County School District liable under 42 U.S.C. § 1983 for violating Raymond's right to bodily integrity pursuant to the Due Process Clause of the Fourteenth Amendment. In addition, Plaintiff brings state law assault and battery claims against Defendant Key. Defendants argue Plaintiff's claims must be dismissed because (1) Plaintiff's factual allegations do not rise to the conscience-shocking level necessary to support a substantive due process claim under the Fourteenth Amendment; (2) the lack of a constitutional violation entitles Principal Key to qualified immunity and precludes a claim against the Bibb County School District; and (3) Defendant Key is entitled to official immunity against Plaintiff's state law claims, as Plaintiff's factual allegations cannot support a finding of actual malice. As explained below, the Court agrees.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleading is entitled to relief."[15] The purpose of this requirement is to "give the defendant fair notice of what the

---

[14] Pl.'s Am. Compl., [Doc. 6] at para. 8-10.
[15] Fed.R.Civ.P. 8(a)(2).

... claim is and the grounds upon which it rests."[16]  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."[17]  The complaint must contain enough factual allegations to "raise a right to relief above the speculative level."[18]  With that in mind, the Court will first address Plaintiff's § 1983 claims against Defendants and then turn to the state law claims.

## I.  42 U.S.C. § 1983 Claims

### A.  *Principal Key's Liability*

First, Defendants argue qualified immunity shields Key against § 1983 liability because his conduct did not violate Raymond's clearly established Fourteenth Amendment substantive due process rights.  "[Q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."[19]  As the Supreme Court recently reiterated, "[w]hen properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law."[20]  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal

---

[16] *Twombly*, 550 U.S. at 554-55 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted) (alteration in original).

[17] *Id*. at 555 (citations omitted) (alteration in original).

[18] *Id*. at 555-56.

[19] *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (quotation marks omitted).

[20] *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015).

liability or harassing litigation."[21]  Qualified immunity is immunity from suit and should be resolved as early as possible in the case.[22]

When a defendant invokes qualified immunity, the initial burden is on the defendant to show that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."[23]  Once the defendant satisfies that burden, the burden then shifts to the plaintiff to show that (1) a violation of a constitutional right occurred, and (2) that right was "clearly established" at the time of the violation.[24]

Discretionary Authority

Defendant Key contends he was acting within his discretionary authority as principal when he restrained Raymond for being disruptive and uncooperative during school testing.  Plaintiff, however, argues discovery is needed to determine whether Defendant acted within his discretionary authority.  The Court disagrees.

To determine whether a government official is acting in the scope of their discretionary authority, the Court asks whether the official was: (1) "performing a legitimate job-related function (that is, pursuing a job-related goal)," (2) "through means that were within his power to utilize."[25]  "[T]he inquiry is not whether it was within the

---

[21] *Lee*, 284 F.3d at 1194.
[22] *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009).
[23] *Lee*, 284 F.3d at 1194.
[24] *Pearson*, 555 U.S. at 232.
[25] *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

defendant's authority to commit the allegedly illegal act."[26]  Instead, "[i]n applying each prong of this test, we look to the general nature of the defendant's actions, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances.[27]  "Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with his legitimate job description."[28]  It is well settled that school officials "have the responsibility of maintaining decorum in the classroom," and "[d]isciplining students is a legitimate discretionary function performed by principals."[29]

Here, regardless whether Defendant's "interim control hold" was unconstitutional, it is clear Defendant Key was acting within his discretionary authority as a principal and performing a legitimate job-related function when he disciplined a student who was disruptive during school testing.  Though the Amended Complaint repeatedly claims Key's conduct was done "without justification or disciplinary purpose,"[30] the attached exhibit establishes Key took disciplinary measures against Raymond because he was

---

[26] *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir.1998) (quotation marks and citation omitted).

[27] *Holloman*, 370 F.3d at 1266.

[28] *Id.*

[29] *Id.* at 1267; *see Kirkland ex rel. Jones v. Greene Cty. Bd. of Educ.*, 347 F.3d 903, 904 n. 1 (11th Cir. 2003); *see e.g., Ziegler v. Martin Cnty. Sch. District*, 831 F.3d 1309, 1325-26 (11th Cir. 2016); *Hill v. Cundiff*, 797 F.3d 948, 981 (11th Cir. 2015).

[30] Pl. Am. Compl., [Doc. 6] at para. 7.

yelling in the hallway and continued to escalate the situation once in the classroom. As stated above, under Federal Rule of Civil Procedure 10(c), exhibits attached to a complaint are part of the pleading for all purposes.[31] The Court need not ignore statements in the attached exhibit in favor of Plaintiff's general and conclusory allegations.[32] Based on the attached exhibit, it is clear Defendant Key was acting within the scope of his discretionary authority.

Accordingly, the burden shifts to Plaintiff to prove Defendant Key's conduct violated Raymond's clearly established Fourteenth Amendment substantive due process rights.

Constitutional Violation

Plaintiff contends Defendant Key violated Raymond's substantive due process rights when Key placed Raymond's arm in an unnatural position behind his back for more than twenty minutes without justification or disciplinary purpose. The Fourteenth Amendment of the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."[33] Embodied in the Fourteenth Amendment is the protection of both procedural and substantive due process. The substantive component of the Due Process Clause "protects individual liberty against

---

[31] Fed.R.Civ.P. 10(c).
[32] See Griffin, 496 F.3d at 1205-06 ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").
[33] U.S. CONST. amend. XIV § 1.

'certain government actions regardless of the fairness of the procedures used to implement them.'"[34]  This protection is "intended to prevent government officials from abusing their power, or employing it as an instrument of oppression."[35]

The Supreme Court has tightly restricted the scope of substantive due process claims and has expressed its reluctance to expand its scope.[36]  "Conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience-shocking in a constitutional sense."[37]  The Supreme Court and the Eleventh Circuit "have both said repeatedly that the Fourteenth Amendment is not a 'font of tort law' that can be used, through section 1983, to convert state tort claims into federal causes of action."[38]  "To rise to the conscience-shocking level, conduct most likely must be intended to injure in some way unjustifiable by any government interest."[39]

As an initial matter, the Court must address whether Defendant Key's actions constitute corporal punishment because the "resolution of this issue dictates the kind of

---

[34] *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

[35] *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotation marks and citation omitted).

[36] *Collins*, 503 U.S. at 125 (citation omitted) ("[G]uideposts for responsible decision making in this unchartered area [expansion of substantive due process] are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.").

[37] *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009) (citing *Lewis*, 523 U.S. at 847).

[38] *Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000) (quoting *Lewis*, 523 U.S. at 848).

[39] *Davis*, 555 F.3d at 982 (internal quotation marks omitted) (citing *Lewis*, 523 U.S. at 849).

analysis [the Court] must adopt for [Plaintiff's] claim."[40] "The key inquiry [for corporal punishment] is not what form the use of force takes but whether the use of force is 'related to [the student's] misconduct at school and … for the purpose of discipline.'"[41] The Amended Complaint alleges Defendant Key acted "without justification or disciplinary purpose,"[42] which suggests Plaintiff is arguing Defendant Key's actions do not constitute corporal punishment. However, the attached exhibit establishes otherwise, and as explained above, the Court will not ignore statements in the attached exhibit in favor of Plaintiff's general and conclusory allegations.[43] Defendant Key's use of the "interim control hold" was related to Raymond's disruptive and uncooperative behavior during school testing, and Defendant Key's intent to discipline is demonstrated by the fact that Key released Raymond once he calmed down and agreed to go to the reflection area.[44] Thus, because Defendant Key's conduct was related to Raymond's misconduct at school and for the purpose of discipline, his actions constitute corporal punishment.[45]

---

[40] *T.W. ex rel. Wilson v. School Bd. of Seminole Cnty., Fla.*, 610 F.3d 588, 598 (11th Cir. 2010) (quoting *Neal*, 229 F.3d at 1072)).

[41] *Id.*, 610 F.3d at 598-99 (quoting *Neal*, 229 F.3d at 1073).

[42] Pl.'s Am. Compl., [Doc. 6] at para. 7.

[43] *See Griffin*, 496 F.3d at 1205-06.

[44] *See T.W. ex rel. Wilson*, 610 F.3d at 599 ("[The defendant's] intent to discipline [the student] … is evidenced by [the fact that the defendant] released [the student] as soon as [the student] calmed down.").

[45] Even assuming Defendant Key's use of force was unrelated to Raymond's disruptive behavior and lacked a disciplinary purpose, Key's conduct still does not violate the Constitution. "A range of teacher conduct exists that is neither corporal punishment nor so conscience-shocking as to trigger a substantive due process violation." *Peterson v. Baker*, 504 F.3d 1331, 1337 n.4 (11th Cir. 2007). Holding a student's arm behind his back in an unnatural position falls within that range. *See Hatfield v. O'Neill*, 534 F. App'x 838, 845 (11th Cir. 2013) (per curiam) (finding that forceful feeding that caused the student's gums to bleed, removal of skin from student's lips, and forcing student's thumb down her throat to stop her from sucking on her thumb were not

Generally, "excessive corporal punishment, at least where not administered in conformity with a valid school policy authorizing corporal punishment … may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior."[46]  The Eleventh Circuit, however, clarified that

> any time a student is slapped or paddled, whether pursuant to or apart from a school policy, the student may suffer some pain or injury…. [T]he kind of minor injury suffered by a student during the administration of traditional corporal punishment will rarely, if ever, be the kind of injury that would support a federal due process claim for excessive corporal punishment…."[47]

Instead, to show the allegedly excessive corporal punishment is conscience-shocking, a plaintiff must prove at a minimum that "(1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury."[48]

To determine whether the amount of force used is obviously excessive, the Court considers the totality of the circumstances.[49] Among other things, the Court looks to "(1)

---

conscience shocking); *Wilson*, 610 F.3d at 599 (tripping a student was not considered corporal punishment, nor did this act constitute a substantive due process violation); *Mahone v. Ben Hill Cnty. Sch. Sys.*, 337 F.App'x 913, 916 (11th Cir. 2010) (per curiam) ("[A]lthough [the teacher] had no legitimate purpose for allegedly shoving [the student] into a trash can, such conduct does not shock the conscience in a constitutional sense."); *Nix v. Franklin County School District*, 311 F.3d 1373 (11th Cir. 2002) (finding mere negligence is insufficient to sustain a constitutional claim where a teacher instructed a student to hold a live wire, and the student died after touching the wire).

[46] *Neal*, 229 F.3d at 1075.

[47] *Id.* at 1076.

[48] *Id.* at 1075.

[49] *Id.*

the need for the application of corporal punishment, (2) the relationship between the need and amount of punishment administered, and (3) the extent of the injury inflicted."[50]

First, in considering the need for the use of force, the Court "look[s] at the circumstances surrounding [Defendant Key's] use of force to determine whether the force is capable of being construed as an attempt to serve pedagogical objectives."[51] Here, Defendant Key's conduct "is capable of being construed as an attempt" to restore order and maintain discipline.[52] Defendant Key restrained Raymond only after Raymond was yelling in the hallway during school testing, refusing to sit in his seat or go to the reflection area to calm down, retreating behind a table near the teacher's desk, and continuing to disrupt the classroom. Although Defendant Key could arguably have used alternative disciplinary methods, his use of the interim control hold to restrain Raymond was disciplinary and thus not "wholly unjustified by a government interest."[53]

Next, the Court must consider the relationship between the need for the use of force and the amount of force administered. Here, Defendant Key was acting with disciplinary purpose due to Raymond's disruptive and noncompliant behavior. The punishment itself lasted approximately twenty minutes and involved Defendant Key holding Raymond's arms behind his back "in an unnatural position" until he calmed down and agreed to go to the reflection area. Although Defendant Key could have restrained Raymond "in a less

---

[50] *Id.*
[51] *Wilson*, 610 F.3d at 600 (internal quotation marks and citation omitted).
[52] *Id.*
[53] *Peterson*, 504 F.3d at 1336.

harmful manner, the amount of force at issue here was not totally unrelated to the need for the use of force."[54]

Finally, to determine whether the corporal punishment was obviously excessive, the Court must consider the extent of Plaintiff's injuries. Plaintiff suffered "serious personal injuries," resulting in medical expenses in excess of $3,900.00.[55] While the extent and nature of Plaintiff's injuries is an important factor in the analysis, "it is indeed only one factor in our analysis."[56] Although Plaintiff allegedly suffered "serious personal injuries," the conduct causing these injuries is simply not tantamount to arbitrary, egregious, and conscience-shocking behavior.[57] After considering the totality of the circumstances, Plaintiff's allegations fail to establish Defendant Key's use of force was obviously excessive.

Additionally, Plaintiff's allegations are insufficient to sustain a claim Defendant Key "subjectively intended to use an obviously excessive amount of force in circumstances where it was foreseeable that serious bodily injury would result."[58] "In short, the standard is shock the conscience and totality of circumstances; and when some reason exists for the

---

[54] *Wilson*, 610 F.3d at 601 (internal quotation marks and citation omitted); *compare Hatfield*, 534 F. App'x at 847-48 (holding the force used was obviously excessive where the teacher struck a profoundly mentally and physically handicapped child on the head in a place where she was particularly vulnerable due to her previous surgery and did so for no legitimate reason) (emphasis in original).

[55] Pl.'s Am. Compl., [Doc. 6] at p. 8-9.

[56] *Wilson*, 610 F.3d at 601; *see also Neal*, 229 F.3d at 1076.

[57] *See Neal*, 229 F.3d at 1076 ("But the kind of minor injury suffered by a student during the administration of traditional corporal punishment will rarely, if ever, be the kind of injury that would support a federal due process claim for excessive corporal punishment under the test we adopt today.").

[58] *Id*. at 1075.

use of force, constitutional violations do not arise unless the teacher inflicts serious physical injury upon the student."[59]  Defendant Key had a disciplinary reason to use of force, and Plaintiff has not alleged that Raymond suffered a serious physical injury severe enough to shock the conscience.  Ultimately, the allegations are insufficient to establish Defendant Key intended to use obviously excessive force in circumstances where it was foreseeable serious bodily injury would result.

Furthermore, in analyzing Eleventh Circuit case law in which corporal punishment has given rise to a potential constitutional violation, this Court cannot find Defendant Key's conduct rises to arbitrary and capricious.  For instance, in *Neal v. Fulton County Board of Education*, the Eleventh Circuit determined a student adequately alleged a constitutional violation claim against his high school coach because the coach intentionally struck the student with a metal weight lock and knocked his eye out of its socket.[60]  By contrast, in *Peterson v. Baker*, the court concluded that choking a student until he lost his breath and sustained blue and red bruises and a scratch on his neck was not obviously excessive because the extent of the student's bodily injuries were not serious.[61]  Eleventh Circuit case law illustrates how rigorous conscience-shocking conduct is,[62] and the facts as alleged in

---

[59] *Peterson*, 504 F.3d at 1338.
[60] *Neal*, 229 F.3d at 1071-76.
[61] *Peterson*, 504 F.3d at 1334-35, 1337.
[62] *See, e.g., Dacosta v. Nwachukwa*, 304 F.3d 1045, 1048-49 (11th Cir. 2002) (college instructor's conduct did not rise to conscience-shocking level where instructor slammed door on student's arm causing the glass to shatter, knocked student back by swinging the door violently, and shoving plaintiff's face); *Nix*, 311 F.3d at 1377-79 (no constitutional deprivation where student died after touching an exposed live wire in teacher's

Plaintiff's Amended Complaint do not rise to that level. Simply put, Plaintiff's allegations are not "so brutal, demeaning, and harmful as to literally shock the conscience of the court."[63] Plaintiff has not alleged facts sufficient to state a claim that Defendant Key deprived Raymond of a constitutional right; thus, Plaintiff's § 1983 claim must be dismissed.[64]

Clearly Established

Even assuming Defendant's Key's conduct amounted to a violation of Raymond's constitutional rights, qualified immunity still protects Defendant Key because any such rights were not clearly established. "For a constitutional right to be clearly established the contours of the right must be sufficiently clear that a reasonable [official] would understand that what he is doing violates the law."[65] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."[66] In other words, the issue is whether the law gave the [official] "fair warning" that his conduct was unconstitutional.[67]

---

electromechanical class during a voltage-reading demonstration); *compare Kirkland*, 347 F.3d at 904-05 (the court found the high school principal's conduct conscience shocking where he struck the student with metal cane in head, ribs, and back for disciplinary reasons).

[63] *Neal*, 229 F.3d at 1075.

[64] *Id*.

[65] *Bates v. Harvery*, 518 F.3d 133 (11th Cir. 2008).

[66] *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

[67] *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

When determining whether the law is clearly established, factually similar cases are "usually . . . needed to demonstrate that officials were fairly warned that their application of force violated the victim's constitutional rights."[68]  In conducting the clearly-established analysis, "the district court should compare the facts of the case before the court that allege a constitutional deprivation with those cases that the party opposing the motion contends show the clearly established nature of the law."[69]  To find such cases, the Court must look only "to law as decided by the Supreme Court, the Eleventh Circuit, or the Supreme Court of [Georgia]."[70]

Here, no case law gave Defendant Key fair warning his actions would violate Raymond's constitutional rights.  Indeed, the Eleventh Circuit has dismissed claims of students who have endured arguably more severe punishment than Raymond.  For example, in *T.W. ex rel. Wilson v. School Board of Seminole County, Florida*, a teacher on four different occasions (1) sat on a student to restrain him, (2) forced him to the floor in an inappropriate position, (3) twisted his arm and shoved him into a wall, and (4) pinned his arms behind his back, all causing transient pain, minor bruising and psychological trauma.[71]  The court found the teacher's conduct was not obviously excessive to support the student's claim of a violation of his substantive due process rights.[72]

[68] *Willingham v. Loughnan*, 321 F.3d 1299, 1303 (11th Cir. 2003).
[69] *Merricks v. Adkisson*, 785 F.3d 553, 559 (11th Cir. 2015).
[70] *Leslie v. Hancock Cnty. Bd. of Educ.*, 720 F.3d 1338, 1345 (11th Cir. 2013).
[71] 610 F.3d at 603.
[72] *Id*. at 600-603.

Moreover, in cases where the Eleventh Circuit has found excessive corporal punishment claims to be legally sufficient to sustain a constitutional claim, the conscience-shocking conduct was far worse than in this case. In *Kirkland ex rel. Jones v. Greene County Board of Education*, the principal repeatedly struck a non-resisting student with a metal cane, including once on the head.[73] In *Neal*, a high school coach struck a student in the eye with a weight lock, knocking the student's eye out of its socket.[74] Plaintiff's allegations here do not rise to the level of *Kirkland* or *Neal*. Accordingly, Defendant Key's actions did not violate Raymond's clearly established rights, and thus, Key is entitled to qualified immunity.

### B. The Bibb County School District's Liability

Next, Plaintiff contends the Bibb County School District (the "School District") is liable under § 1983 because Principal Key's conduct was done in accordance with the School District's formal policy or custom. In order to impose § 1983 liability on a governmental entity, a plaintiff must show: (1) his constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom caused the violation.[75] Because Plaintiff's allegations fail to state a claim that Raymond's constitutional rights were violated, Plaintiff's claim against the School District must fail as well. However, even assuming

---

[73] 374 F.3d at 904.
[74] 229 F.3d at 1076.
[75] *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Plaintiff sufficiently alleged Defendant Key violated Raymond's substantive due process rights, the claim against the School District would still fail, as Plaintiff has not identified a local government policy or custom that caused the deprivation of Raymond's constitutional rights.[76]

A local government entity may not be found liable under § 1983 for an injury inflicted solely by its employees or agents, even when that injury results in a constitutional violation.[77] Instead, a local government entity "is liable only when [its] 'official policy' causes a constitutional violation."[78] To establish this, a plaintiff must "identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county."[79] "Alleging vaguely that a policy, custom or practice exists is not enough; rather plaintiff must specifically identify which policy or practice, if any, caused the alleged injuries."[80]

Here, Plaintiff merely alleges the School District established "a formal policy or custom allowing for Principals at the schools they operate to engage in unjustified and excessive physical contact with students, including the use of an 'interim control hold.'"[81]

---

[76] *See Chaney v. Fayette Cnty. Public Sch. Dist.*, 977 F. Supp. 2d 1308, 1318 (N.D. Ga. 2013) (A plaintiff "must identify a specific deprivation of a federal right and the local government policy or custom that caused the deprivation of the federal rights." (citing *Bd. of Cnty. Com'rs v. Brown*, 520 U.S. 397, 404 (1997)).
[77] *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978).
[78] *Id.*
[79] *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citing *id*. at 690-61, 694).
[80] *Searcy v. Ben Hill Cnty. Sch. Dist.*, 22 F. Supp. 3d 1333, 1341 (M.D. Ga. 2014) (internal quotation marks and citation omitted).
[81] Pl.'s Am. Compl., [Doc. 6] at para. 19.

The Amended Complaint describes this one incident and does not state any other facts to establish this incident was part of a widespread policy or pervasive practice.[82]  Further, there are no allegations the School District directed Defendant Key to use an "interim control hold" or was even aware of the alleged unconstitutional conduct and failed to stop it.  To survive a motion to dismiss, Plaintiff must do more than point to conclusory allegations.  Plaintiff must "plead[] factual content that allows the court to draw on the reasonable inference that the defendant is liable for the misconduct alleged."[83]  Plaintiff's allegation of a "policy or custom allowing … Principals … to engage in unjustified and excessive physical contact with students" is conclusory and fails to adequately state a § 1983 claim against the School District.[84]  Accordingly, Plaintiff's claim against the School District must be dismissed.

### A.  State Law Claims[85]

---

[82] *See Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1263 n.11 (11th Cir. 2010) ("As a general rule, an 'isolated incident, however unfortunate, does not demonstrate evidence of the [c]ounty's 'persistent' or 'widespread' policy,' *McDowell v. Brown*, 392 F.3d 1283, 1290–91 (11th Cir.2004), and will not be considered 'so pervasive as to be a custom or practice,' *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1330 n. 6 (11th Cir. 2003).").

[83] *Iqbal*, 556 U.S. at 678.

[84] Pl.'s Am. Compl., [Doc. 6] at para. 19.

[85] Because Plaintiff's state and federal claims arise from a common nucleus of operative fact, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(a).

Lastly, Plaintiff brings state law assault and battery claims against Defendant Key in his individual capacity, arguing Key acted with actual malice and the intent to cause bodily harm when he held Raymond's arm behind his back for more than twenty minutes. Defendant Key, however, contends he is entitled to official immunity because these are merely conclusory allegations and do not alone rise to the level of actual malice. Again, the Court agrees.

The Constitution of Georgia provides government officials with official immunity for discretionary actions unless they acted with "actual malice or with intent to cause injury."[86] "Georgia courts have repeatedly held that the supervision and discipline of students are discretionary acts."[87] Actual malice is defined "as a deliberate intention to do wrong"[88] and does not include "the reckless disregard for the rights and safety of others."[89] "The phrase actual intent to cause injury means an actual intent to cause harm to the

---

[86] *Murphy v. Bajjani*, 282 Ga. 197, 203 (2007) (citing 1983 Ga. Const., Art. I, Sec. II, Para. IX(d)); *see also Hoyt v. Cooks*, 672 F.3d 972, 981 (11th Cir. 2012) (citing *Merrow v. Hawkins*, 266 Ga. 390, 391 (1996)).

[87] *Foster v. Raspberry*, 652 F. Supp. 2d 1342, 1355 (M.D. Ga. 2009) (citing *e.g., Gamble v. Ware Cnty. Bd. of Educ.*, 253 Ga.App. 819, 824 (2002) (finding that the tasks of "supervising and disciplining school children constitute discretionary acts"); *Payne v. Twiggs Cnty. Sch. Dist.*, 232 Ga.App. 175, 177 (1998) (finding that the investigation of a student's complaint against another student was discretionary); *Perkins v. Morgan Cnty. Sch. Dist.*, 222 Ga.App. 831, 834–35 (1996) (finding that school authority's decision to allow early dismissal of a student was discretionary)). The Court also notes that with regard to official immunity Plaintiff does not seem to dispute Defendant Key was acting within his discretionary authority.

[88] *West v. Davis*, 767 F.3d 1063, 1073 (11th Cir. 2014) (internal quotation marks omitted) (quoting *Adams v. Hazelwood*, 271 Ga. 414, 414-15 (1999)).

[89] *Id.* (quoting *Murphy*, 282 Ga. at 203).

plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury."[90]

"The bar for proving malice or an intent to cause injury is high."[91]

Plaintiff only alleges Defendant Key's actions were without justification or disciplinary purpose and were undertaken with actual malice and the intent to cause bodily harm. This conclusory allegation is insufficient to make a showing of "actual malice" under Georgia law.[92] Plaintiff has not alleged any additional facts that would support a finding that Defendant Key used an interim control hold with the intent to cause Raymond harm.[93] Therefore, Defendant Key is entitled to official immunity, and Plaintiff's state law claims are properly dismissed.

## CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss the Amended Complaint [Doc. 9] is **GRANTED**, and Defendants original Motion to Dismiss [Doc. 3] is **MOOT**.

**SO ORDERED**, this 16th day of August, 2017.

S/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[90] *Id.* (internal quotation marks omitted) (quoting *Kidd v. Coates*, 271 Ga. 33, 33 (1999)).

[91] *Schwartz v. Gwinnett Cnty., Ga.*, 924 F. Supp. 2d 1362, 1378 (N.D. Ga. 2013).

[92] *See Harper v. Perkins*, 459 F.App'x 822, 828 (11th Cir. 2012) (per curiam) ("We recognize ... that we cannot rely on Plaintiff's legal assertions of actual malice in the complaint.").

[93] *See Jones v. Fransen*, 857 F.3d 843, 856 (11th Cir. 2017) (holding the defendants were entitled to official immunity for mere negligence claims against them because there were no other facts offered to suggest ill intentions).